PEOPLE v DITTON

1. CRIMINAL LAW—NONSUPPORT—REFUSAL TO PAY SUPPORT—LEAVING THE STATE—COMPLETED OFFENSE—TIME OF FAILURE TO PAY.

  The offense of refusing or neglecting to pay support according to a court decree and leaving the state is not completed where there has been no failure to pay support at the time which the party ordered to pay support left the state and the failure to pay occurs after that party left the state.

2. CRIMINAL LAW—NONSUPPORT—REFUSAL TO PAY SUPPORT—LEAVING THE STATE—INABILITY TO PAY—DEFENSES—STATUTES.

  The criminal statute making it an offense to refuse or neglect to pay support and leave the state does not expressly provide a defense for an inability to pay, although other Michigan criminal nonsupport statutes make it necessary to show a defendant's ability to pay (MCLA 750.165; MSA 28.362).

3. CRIMINAL LAW—NONSUPPORT—REFUSAL TO PAY SUPPORT—LEAVING THE STATE—INABILITY TO PAY—DEFENSES—STATUTES.

  The inability of a defendant to pay required support is a valid defense to the crime of refusing or neglecting to pay support and leaving the state; therefore a defendant's conviction on this offense should be reversed where (1) the trial court ruled that the ability to pay was irrelevant under the statute, (2) the prosecutor offered absolutely no evidence on the issue, and (3) the defendant testified to his lack of income, serious illness and inability to pay (MCLA 750.165; MSA 28.362).

4. APPEAL AND ERROR—PRESERVING ISSUE—STATUTES—CONSTITUTIONALITY OF STATUTES.

  The failure to raise the issue of the constitutionality of a statute in the trial court precludes appellate review on the issue of constitutionality of the statute.

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Desertion and Nonsupport §§ 31, 32, 34, 35.
[2, 3] 23 Am Jur 2d, Desertion and Nonsupport §§ 16, 18, 37.
[4] 5 Am Jur 2d, Appeal and Error § 602.

Appeal from Branch, Thomas C. Megargle, J. Submitted June 14, 1977, at Grand Rapids. (Docket No. 31332.) Decided September 21, 1977.

Robert D. Ditton was convicted of refusing or neglecting to pay support and leaving the state. Defendant appeals. Reversed and remanded. .

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John Livesay,* Prosecuting Attorney (Prosecuting Attorneys Appellate Unit, *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Cherry & Cherry,* for defendant on appeal.

Before: M. J. KELLY, P. J., and M. F. CAVANAGH and J. R. ROOD,* JJ.

M. J. KELLY, P. J. Defendant appeals his conviction for nonsupport charged to have commenced on or about May 28, 1974, and continuing thereafter, and leaving the state, contrary to MCLA 750.165; MSA 28.362, a felony. He was convicted by a jury and from a sentence of one to two years appeals of right.

Defendant raises four issues:

1. Did the appellant "leave the state" after "refusing or neglecting" to pay support within the meanings of those phrases and in violation of MCLA 750.165; MSA 28.362?

2. Was the appellant's inability to pay support a bar to prosecution under the statute and was the trial court in error by refusing to instruct the jury that "neglect" and "refusal" presupposes one's having the requisite ability to pay?

---

* Former circuit judge sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

3. Did MCLA 750.165; MSA 28.362 deny the appellant's constitutionally guaranteed right to equal protection under the law because of its discriminatory application only to "husbands" and "fathers"?

4. The statute is unconstitutional because it inhibits defendant's freedom of migration between the states.

The instant statute provides:

"Where in any decree of divorce, or decree of separate maintenance granted in this state, or by order entered during the pendency of any such proceedings, if personal service is had upon the husband or upon the father of any minor child or children, under the age of 17 years, or such husband or father shall have entered an appearance in such proceedings either as plaintiff or defendant, the court shall order such husband to pay any amount to the clerk or friend of the court for the support of any wife or former wife who by reason of any physical or mental affliction is unable to support herself, or father to pay any amount to the clerk or friend of the court for the support of such minor child or children, and said husband or father shall refuse or neglect to pay such amount at the time stated in such order and shall leave the state of Michigan, said husband or father shall be guilty of a felony: Provided, however, if at any time before sentence he shall enter into bond to the people of the state of Michigan, in such penal sum and with such surety or sureties as the court may fix, conditioned that he will comply with the terms of such order or decree, then the court may suspend sentence therein: Provided further, That upon failure of such person to comply with said undertaking he may be ordered to appear before the court and show cause why sentence should not be imposed, whereupon the court may pass sentence, or for good cause shown may modify the order and take a new undertaking and further suspend sentence as may be just and proper." MCLA 750.165; MSA 28.362.

The statute has not been interpreted by an appellate court. In *People v Steele,* 219 Mich 44, 47; 188 NW 380, 381 (1922), it was held that there can be no conviction for desertion where "[t]he evidence is undisputed that his refusal and neglect to make provision for the support of the family took place some months after the separation * * * . In order to make out the offense under this statute, there must be coupled with the desertion, and at the very time of it, a failure to make provision." We think the analogy carries over to the instant felony nonsupport statute and would require that the refusal or neglect be coupled with flight from the state. We are supported in this reasoning by an attorney general's opinion, OAG, 1945–1946, No 0-3019, p 166 (January 9, 1945), which advises as follows:

"In order to constitute a complete crime, it would be necessary that the husband refuse to make the payments for support ordered by the court at or prior to the time of his leaving the State of Michigan and the act of leaving the State would complete the offense. This being true, the answer to your second question, in our opinion, would be that the crime would take place on the day of his leaving the state after having refused to comply with the order of the court. In this connection we are enclosing copies of our Opinions No 0-220 and No 0-2096. In addition to the authorities therein cited we would also refer you to the case of *People v Steele,* 219 Mich 44; also Gillespie's Michigan Criminal Law and Procedure, pages 1034 and 1035." *Id.* at 167.

In OAG, 1943–1944, No 0-220, p 352 (April 16, 1943), the Attorney General stated that a father cannot be considered a fugitive from justice and is therefore not subject to extradition under the instant statute unless his refusal or neglect to pay as required occurred before he left Michigan. The opinion states:

"If such father had not as yet violated the decree at the time he left this state and his neglect and refusal to pay as required by the decree occurred after he left the state of Michigan, then he has not committed the complete offense." *Id.* at 353.

Although not bound by the attorney general's opinion, *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231; 160 NW2d 778 (1968), *lv den,* 381 Mich 765 (1968), we adopt the reasoning therein.

The questions of whether appellant departed the state in April of '75 or in October of '75 or both, and whether he was then in arrears (did "refuse or neglect to pay such amount at the time stated in such order") we do not address because such are clearly questions of fact. Neither do we choose to rule on the effect of the payment in full of the arrearages before appellant's final departure from the state on October 16, 1975. Because of the peculiar facts of this case where appellant made only five payments from the date of divorce until the date of trial, the jury could have determined that the corpus delicti of the crime existed notwithstanding the fact that subsequent untimely payments wiped out the arrearages. Since issue 2 is determinative of this appeal however, we find the date of defendant's departure irrelevant to disposition of the appeal.

On this second issue defendant says that he had no income in 1975 and his total 1976 earnings through October were less than $1,400. He says he has been unemployed since the spring of 1976. Defendant says the court had uncontroverted evidence of his inability to pay and should have ruled it a valid defense to the charges.

The statute does not expressly provide for such a defense. Other Michigan criminal nonsupport stat-

utes make it necessary to show defendant's ability to pay. MCLA 750.161; MSA 28.358 pertains to desertion and nonsupport by a man of sufficient ability; MCLA 750.167; MSA 28.364 pertains to refusal or neglect to support one's family despite sufficient ability to do so. Under the Uniform Reciprocal Enforcement of Support Act, MCLA 780.166(c); MSA 25.225(16)(c), ability to pay is a requisite for a contempt proceeding as is a like proceeding for failure to support under MCLA 552.201; MSA 25.161, see *Borden v Borden,* 67 Mich App 45; 239 NW2d 757 (1976), *Sword v Sword,* 399 Mich 367; 249 NW2d 88 (1976).

The difference between statutes referred to above and the instant statute turns on a defendant's absence from the state. The Legislature intended to impose strict liability on a defendant who fled rather than pay support. Flight in the past was far more effective in avoiding obligations than it is today. In 1952 the Legislature enacted the Uniform Reciprocal Enforcement of Support Act, MCLA 780.151 *et seq.;* MSA 25.225(1) *et seq.* The preamble sets forth the following:

"An act relative to the extradition of persons charged with failure to provide support for dependents and to provide for the enforcement by circuit courts in chancery of this state of the duty of such persons to support their dependents in accordance with the requirements of the laws of other states or any foreign state having reciprocal legislation, and to grant to such courts power to enforce such obligations by procedures including contempt; and to prescribe the procedure to be followed by such court in case of proceedings to require enforcement of the duty to support residents of this state by those obligated to furnish such support through proceedings in courts of other states or any foreign state having reciprocal legislation; and to prescribe rules of evidence in such proceedings."

Under the uniform act a procedure is set forth that penalizes those who do not comply with the court's order. The provision mandates that the defendant prior to being punished must have sufficient ability to comply with the court order. The punishment under the statute is incarceration for contempt until the defendant complies, but in any event not to exceed one year. MCLA 780.166(c); MSA 25.225(16)(c). Forty-nine states, the District of Columbia, Guam, Puerto Rico and the Virgin Islands have adopted the uniform act. New York has a similar act which allows reciprocity between the states. Only the absconding parent who disappears or travels to a foreign country presents a major problem. In light of the uniform act the viability and utility of the felony statute, under which defendant was convicted, becomes questionable.

In *Commonwealth v O'Harrah,* 262 SW2d 385, 388 (Ky, 1953), the Kentucky statute making it a crime to fail to pay court-ordered child support was held unconstitutional. The statute did not make intent an element of the offense and did not make inability to pay a defense. In considering this latter omission, the Kentucky court noted:

"A father who can but will not take care of his child ought not be coddled by the law. But oppression ought not be practiced in the name of law and justice. Some observations may be made as to the severity of this statute.

"The accused delinquent parent may have been ever so willing and anxious to perform his natural duty and to comply with the terms of the civil judgment but was wholly unable to do so. Though he be a bedridden pauper and his child or its mother in affluent circumstances or have abundant means of support, the defendant is afforded no mitigation and is allowed no defense except that he has in fact paid, as here, the two monthly sums of $15 each."

The court observed, "[t]he cruelty of a debtor's prison comes to mind". Id.

In a later case, the Kentucky court reconsidered the *O'Harrah* decision and held that inability to pay must be considered a defense available under a statute of the same character. *Commonwealth v Mason,* 317 SW2d 166 (Ky, 1958).

The Michigan nonsupport statutes generally reflect the rule that the offense presupposes the ability to pay. *People v Collins,* 292 Mich 217; 290 NW 386 (1940), *People v Coleman,* 325 Mich 618; 39 NW2d 201 (1949). Moreover, in contempt proceedings, the party charged with paying child support must be allowed to explain why the order has not been obeyed. It is only "the wilful, the recalcitrant, the obdurate or deceitful" who are not excused from their legal obligations. *Reed v Reed,* 53 Mich App 625, 627; 220 NW2d 199 (1974).

We find no meaningful distinction between the statute in question and the statute found unconstitutional in Kentucky.

We hold that the trial court erred in ruling that ability to pay was irrelevant. The prosecutor offered absolutely no evidence on the issue. Appellant's former wife admitted that she had no knowledge of his employment status. Defendant testified to lack of income, serious illness and inability to pay. He introduced his 1975 tax return and certain exhibits establishing earnings. We hold that inability to pay is a defense to the crime charged under this statute. We reverse the conviction and remand for proceedings consistent herewith.

Issues 3 and 4 were not raised below. The constitutionality of the statute was not challenged in the trial court and failure to raise the issues below precludes appellate review. *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), *lv den,* 399 Mich 827 (1977).