PEOPLE v ADAMS

Docket No. 251213. Submitted March 9, 2004, at Lansing. Decided May 18, 2004, at 9:15 A.M.

Richard C. Adams was charged in the Saginaw Circuit Court with the felony of failing to pay child support as ordered by a court. The prosecution filed a motion in limine to exclude evidence of the defendant's inability to pay, arguing that the statute under which the defendant was charged, MCL 750.165, as amended by 1999 PA 152, provides for a strict-liability offense, thus making inability to pay irrelevant and not a defense. The court, Fred L. Borchard, J., denied the motion. The prosecution appealed by leave granted.

The Court of Appeals *held*:

MCL 750.165, as amended by 1999 PA 152, provides for strict liability.

The statute, as amended, does not include a fault element. Nevertheless, consideration must be given to whether the Legislature intended to require fault as an element of the offense. Factors relevant to this consideration include whether the statute is a codification of common law; the statute's legislative history or its title; guidance to interpretation provided by other statutes; the severity of the punishment provided; whether the statute defines a public-welfare offense, and the severity of potential harm to the public; the opportunity to ascertain the true facts; and the difficulty encountered by prosecuting officials in proving a mental state. Analysis of these factors compel the conclusion that the Legislature did intend the crime of felony nonsupport to be a strict-liability offense.

Reversed.

CRIMINAL LAW — FELONY NONSUPPORT — STRICT LIABILITY.

The felony offense of failing to support a wife or child as required in a decree of separate maintenance or divorce or in a court order is a strict-liability offense; inability to pay is not a defense to a charge of felony nonsupport (MCL 750.165).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark Matus*, Assistant Attorney General, for the people.

*David D. Hoffman, P.C.* (by *David D. Hoffman*) and *Smith Bovill, P.C.* (by *Andrew D. Concannon*), for the defendant.

Before: JANSEN, P.J., and MARKEY and GAGE, JJ.

GAGE, J. The prosecution appeals by leave granted the order denying its motion in limine to exclude evidence of defendant's inability to pay in this prosecution for felony nonsupport. We reverse.

This case requires us to analyze the language of MCL 750.165 to determine whether felony nonsupport is a strict-liability offense. MCL 750.165 was significantly amended in 1999 and neither this Court nor the Supreme Court has addressed the application of the statute since its amendment. Thus, whether MCL 750.165 provides for strict liability is an issue of first impression.

## I. FACTUAL BACKGROUND

Defendant and his wife were divorced in July 1991. They were awarded joint legal custody of their three children, and defendant was ordered to pay monthly child support. Defendant, however, failed to pay the support as ordered.[1] On June 4, 2003, a warrant was issued for defendant's arrest for failure to pay the arrearage, which on that date totaled $36,265.44.

---

[1] Defendant and his wife were divorced in the state of Utah and the original order of support was entered in that state. The Saginaw Circuit Court assumed jurisdiction over the case when defendant's wife and children moved to the state of Michigan in September 2000.

Defendant was charged with one count of felony nonsupport pursuant to MCL 750.165. He pleaded not guilty, and trial was set for October 7, 2003. On August 25, 2003, the prosecution moved to bar defendant from introducing evidence or arguments regarding defendant's alleged inability to pay, arguing that the 1999 amendment of MCL 750.165 changed the statute to a strict-liability crime; thus, inability to pay was irrelevant.

Following a hearing on the motion, the trial court stated that there were several factors to consider in determining the Legislature's intent regarding the meaning of a statute. Applying those factors, the court determined that the 1999 amendment did not create a strict-liability offense. Accordingly, the court denied the prosecution's motion.

## II. STANDARD OF REVIEW

The proper interpretation of a statute is a question of law reviewed de novo on appeal. *People v Sheets*, 223 Mich App 651, 655; 567 NW2d 478 (1997). If the language of the statute is clear and unambiguous, judicial construction is not allowed. *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996).

## III. INTERPRETATION OF MCL 750.165

A strict-liability crime is one for which the prosecutor need only prove that the defendant performed the act, regardless of intent or knowledge. *People v Lardie*, 452 Mich 231, 240-241; 551 NW2d 656 (1996). Although strict-liability offenses are disfavored, the Legislature has firmly rooted authority to create such offenses. *People v Nasir*, 255 Mich App 38, 40; 662 NW2d 29 (2003).

To determine whether the Legislature intended the crime of felony nonsupport to be a strict-liability offense, we must begin with the language of the statute itself. Before its amendment in 1999, MCL 750.165 read:

> . . . Where in any decree of divorce, or decree of separate maintenance granted in this state, or by order entered during the pendency of any such proceedings, if personal service is had upon the husband or upon the father of any minor child or children, under the age of 17 years, or such husband or father shall have entered an appearance in such proceedings either as plaintiff or defendant, the court shall order such husband to pay any amount to the clerk or friend of the court for the support of any wife or former wife who by reason of any physical or mental affliction is unable to support herself, or father to pay any amount to the clerk or friend of the court for the support of such minor child or children, and said husband or father shall refuse or neglect to pay such amount at the time stated in such order and shall leave the state of Michigan, said husband or father shall be guilty of a felony: *Provided, however*, If at any time before sentence he shall enter into bond to the people of the state of Michigan, in such penal sum and with such surety or sureties as the court may fix, conditioned that he will comply with the terms of such order or decree, then the court may suspend sentence therein: *Provided further*, That upon failure of such person to comply with said undertaking he may be ordered to appear before the court and show cause why sentence should not be imposed, whereupon the court may pass sentence, or for good cause shown may modify the order and take a new undertaking and further suspend sentence as may be just and proper. [1939 PA 89.]

The amended version of § 165, effective November 3, 1999, now reads:

> (1) . . . If the court orders an individual to pay support for the individual's former or current spouse, or for a child of the individual, and the individual does not pay the

support in the amount or at the time stated in the order, the individual is guilty of a felony punishable by imprisonment for not more than 4 years or by a fine of not more than $2,000.00, or both.

(2) This section does not apply unless the individual ordered to pay support appeared in, or received notice by personal service of, the action in which the support order was issued.

(3) The court may suspend the sentence of an individual convicted under this section if the individual files with the court a bond in the amount and with the sureties the court requires. At a minimum, the bond must be conditioned on the individual's compliance with the support order. If the court suspends a sentence under this subsection and the individual does not comply with the support order or another condition on the bond, the court may order the individual to appear and show cause why the court should not impose the sentence and enforce the bond. After the hearing, the court may enforce the bond or impose the sentence, or both, or may permit the filing of a new bond and again suspend the sentence. The court shall order a support amount enforced under this section to be paid to the clerk or friend of the court or to the state disbursement unit.

(4) As used in this section, "state disbursement unit" or "SDU" means the entity established in section 6 of the office of child support act, 1971 PA 174, MCL 400.236. [1999 PA 152.]

The current version of the statute clearly does not include a fault element. Instead, it states merely that the individual "does not pay the support." But, the failure to include a fault element in the statute does not end our inquiry. Where the statute does not include language expressly requiring fault as an element, this Court must focus on whether the Legislature nevertheless intended to require fault as a predicate to guilt. *Lardie, supra* at 239. There are numerous factors that may be considered in deciphering this intent: (1)

whether the statute is a codification of common law; (2) the statute's legislative history or its title; (3) guidance to interpretation provided by other statutes; (4) the severity of the punishment provided; (5) whether the statute defines a public-welfare offense, and the severity of potential harm to the public; (6) the opportunity to ascertain the true facts; and (7) the difficulty encountered by prosecuting officials in proving a mental state. *Nasir, supra* at 41-45; *People v Quinn,* 440 Mich 178, 190 n 14; 487 NW2d 194 (1992).

First and foremost, we must consider whether the statute is a codification of the common law. If mens rea was an included element at common law, this Court should not interpret the codified version as "dispensing with knowledge as a necessary element." *Nasir, supra* at 42, quoting *Quinn, supra* at 186. However, § 165 is not a codification of common law.

We must also consider the legislative history of the statute. In doing so, we note that there are very few cases dealing with the preamended statute and very few of them address the defense of inability to pay. Defendant argues, however, citing *People v Ditton,* 78 Mich App 610; 261 NW2d 182 (1977), that under the preamended statute, inability to pay was a defense to the charge of failure to pay child support. Thus, we will briefly address *Ditton.*

In *Ditton,* the defendant argued that his inability to pay should have been accepted as a valid defense under the preamended § 165 for the defendant's failure to pay support. This Court first acknowledged that the statute did not expressly provide for such a defense, stating, "The Legislature intended to impose strict liability on a defendant who fled rather than pay support." *Id.* at 614-615. Despite this express recognition of the Legislature's intent, this Court nevertheless held that the

trial court erred in ruling that ability to pay was irrelevant, and instead held that inability to pay was a defense to the crime of felony nonsupport under § 165. *Id.* at 617.

To support its conclusion that § 165 included the defense of inability to pay, this Court relied on *Commonwealth of Kentucky v O'Harrah*, 262 SW2d 385, 388 (Ky App, 1953), in which the Kentucky Court of Appeals held that a similar statute imposing criminal liability for failure to pay support was unconstitutional. The *Ditton* Court stated:

> In *Commonwealth v O'Harrah*, 262 SW2d 385, 388 (Ky, 1953), the Kentucky statute making it a crime to fail to pay court-ordered child support was held unconstitutional. The statute did not make intent an element of the offense and did not make inability to pay a defense. In considering this latter omission, the Kentucky court noted:
>
> "A [parent] who can but will not take care of his [or her] child ought not be coddled by the law. But oppression ought not be practiced in the name of law and justice. Some observations may be made as to the severity of this statute.
>
> "The accused delinquent parent may have been ever so willing and anxious to perform his natural duty and to comply with the terms of the civil judgment but was wholly unable to do so. Though he be a bedridden pauper and his child or its mother in affluent circumstances or have abundant means of support, the defendant is afforded no mitigation and is allowed no defense except that he has in fact paid, as here, the two monthly sums of $15 each."
>
> The court observed, "[t]he cruelty of a debtor's prison comes to mind." *Id.*
>
> In a later case, the Kentucky court reconsidered the *O'Harrah* decision and held that inability to pay must be considered a defense available under a statute of the same character. *Commonwealth v Mason*, 317 SW2d 166 (Ky, 1958).

The Michigan nonsupport statutes generally reflect the rule that the offense presupposes the ability to pay. *People v Collins*, 292 Mich 217; 290 NW 386 (1940), *People v Coleman*, 325 Mich 618; 39 NW2d 201 (1949). Moreover, in contempt proceedings, the party charged with paying child support must be allowed to explain why the order has not been obeyed. It is only "the willful, the recalcitrant, the obdurate or deceitful" who are not excused from their legal obligations. *Reed v Reed*, 53 Mich App 625, 627; 220 NW2d 199 (1974).

We find no meaningful distinction between the statute in question and the statute found unconstitutional in Kentucky. [*Id.* at 616-617.]

Accordingly, in *Ditton*, this Court concluded that excluding evidence of inability to pay could result in injustice and therefore the Court implied a criminal intent requirement into the statute.

However, in the current amended statute, in addition to deleting gender-specific references such as "husband" and "father" and the requirement that the person leave the state, the Legislature removed any reference to the individual's refusal or neglect to pay the support. Given the Legislature's deletion of language relating to refusal or neglect, there is no longer wording in the statute that could be used to support a construction that would include a mens rea requirement. Our courts repeatedly emphasize the importance of construing a statute according to its plain language and refraining from interfering with the Legislature's authority to make policy choices. See *People v Hawkins*, 468 Mich 488, 500; 688 NW2d 602 (2003); *People v Sobczak-Obetts*, 463 Mich 687, 694-695; 625 NW2d 764 (2001). Thus, an intent requirement cannot be implied in the absence of any language supporting such an interpretation.

Allowing the defendant to offer an explanation and avoid conviction would negate the postconviction procedures afforded under subsection 3 of the statute. Once the defendant is convicted, subsection 3 of § 165 authorizes the court to suspend the sentence if the defendant files a bond conditioned on compliance. If the defendant fails to comply with the bond, the statute then gives the defendant additional opportunities to show cause why he has still not complied with the support order or other condition on the bond. Given these postconviction chances for redemption before punishment is imposed, the Legislature prudently decided that no additional culpable mental intent need to be shown before a conviction could be entered.

In support of its interpretation of the preamended statute, the *Ditton* Court noted that other Michigan statutes reflected the rule that the offense required consideration of the defendant's inability to pay. *Ditton, supra* at 614-615, 617. For example, MCL 750.161 applies to a person who is "of such sufficient ability" but "fails, neglects, or refuses to provide necessary and proper shelter, food, care, and clothing for his or her spouse or his or her children." Further, MCL 750.167(1)(a) defines "disorderly person" as a "person of sufficient ability who refuses or neglects to support his or her family."[2] Thus, this Court in *Ditton* seemed to attach the intent of those statutes to § 165 by analogy. However, the fact that the Legislature included language regarding ability to pay in the other statutes but

---

[2] In 1977, MCL 780.166 stated in pertinent part:

In addition to the foregoing powers, the court of this state when acting as the responding state has the power to subject the respondent to such terms and conditions as the court may deem proper to assure compliance with its orders, and in particular:

*  *  *

left such language out of § 165 demonstrates the Legislature's intent that it not be recognized as a defense in § 165. See, generally, *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998).

With regard to the severity of the punishment provided, we acknowledge that penalties for public-welfare strict-liability crimes are generally "relatively small" and do no "grave damage to an offender's reputation." *Lardie, supra* at 255, quoting *Staples v United States*, 511 US 600, 617-618; 114 S Ct 1793; 128 L Ed 2d 608 (1994). However, in *People v Motor City Hosp & Surgical Supply, Inc*, 227 Mich App 209, 210; 575 NW2d 95 (1997), this Court upheld a strict-liability crime despite a potential punishment of four years' imprisonment and a $30,000 fine. Here, the maximum potential punishment is imprisonment for four years or a $2,000 fine. MCL 750.165(1). Although four years' imprisonment may seem severe, especially given that imprisonment will eliminate any ability of the defendant to pay support while he is incarcerated, the statute does afford the defendant a chance to redeem himself before a

---

(c) To punish the respondent who fails and refuses to obey and comply with the order of the court, having sufficient ability to comply, such punishment to be imposed by the court as a contempt of court . . . . [1966 PA 232.]

An amendment to the statute, however, later removed part c and thereby removed any reference to the ability to pay. 1985 PA 172.

Also MCL 552.201 stated in pertinent part:

If the court is satisfied that the party is of sufficient ability to comply with the order or by the exercise of diligence could be of sufficient ability to comply with the order and has neglected or refused to comply, the court may immediately punish the party for contempt of court . . . . [1982 PA 418.]

However, this statute was repealed. 1982 PA 295.

sentence is imposed. If an obligor who defied a support order by failing to seek a modification and choosing instead to just not pay fails to satisfy the bond conditions, the imposition of up to a four-year sentence is not severe; instead, at that point, the defendant has repeatedly demonstrated to the court that he will not adhere to the court order, and imprisonment is justified.

Public-welfare statutes impose criminal penalties for their violation irrespective of any intent to violate them in order to ensure the protection of the public welfare. *Nasir, supra* at 42. These statutes do not require a criminal intent because the defendant generally is in a position to prevent the harm. *Lardie, supra* at 254. Criminal nonsupport is the type of crime that generally falls within the class of crimes for which no criminal intent is necessary. A law that requires a parent to support his child benefits not only the child but also the well-being of the community at large. A child who does not receive support suffers regardless of the noncustodial parent's intent; thus, the statute's lack of reference to mental state demonstrates that the Legislature did not distinguish between the willfully deadbeat parent and the careless one. In light of the costs that "deadbeat parents" cause the community, the Legislature is justified in imposing strict liability on those parents who have been given the opportunity to prevent their own violation of the statute but who have failed to do so.

Finally, with respect to the prosecutor's ability to ascertain the true facts and prove mental state, we agree that it would not be difficult for a prosecutor to produce evidence to counter the defense of inability to pay. However, the prosecution should not be required to bear the burden of expending the time, money, and energy into producing this evidence when it all could have been avoided if the defendant had just sought a

modification in the first place before making himself vulnerable to criminal prosecution.

### IV. CONCLUSION

In sum, we cannot ignore the clear legislative intent expressed in MCL 750.165. Analysis of the factors listed in *Nasir* and *Quinn* does not mandate the imputation of an intent element to MCL 750.165. Criminal prosecution under the statute arises out of a court order in an earlier civil action of which the defendant had personal notice; thus, the nonsupporting parent cannot claim ignorance of the obligation to pay. The defendant had the opportunity to voice any objections in the original proceedings. In addition, there are ample statutory provisions under which a party can seek to have the judgment revised to take into consideration changing financial circumstances, instead of inviting criminal liability. While the *Ditton* Court may have read a defense into the statute, the statute has since been amended to delete any reference to refusal or neglect to pay. We conclude that MCL 750.165 should be enforced as written, and, as written, it provides for strict liability. Accordingly, the trial court erred in denying the prosecution's motion in limine to exclude evidence of defendant's inability to pay.

Reversed.