*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRA LEE HAVEMAN,

Defendant-Appellant.

FOR PUBLICATION
May 30, 2019
9:00 a.m.

No. 344825
Barry Circuit Court
LC No. 18-000004-AR

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

At issue in this case is whether MCL 750.135a, which proscribes leaving children "unattended in a vehicle for a period of time that poses an unreasonable risk of harm or injury to the child or under circumstances that pose an unreasonable risk of harm or injury to the child," is a strict liability or general intent offense. The absence of specific language identifying the intent necessary to violate the statute does not relegate the offense to the realm of strict liability. Rather, considering the language of the statute in context, MCL 750.135a describes a general intent offense. We reverse the circuit court's order to the contrary and remand to the district court for further proceedings under the correct legal principles.

## I. BACKGROUND

On July 31, 2017, defendant allegedly parked her car in a Walmart parking lot and went inside to shop for one hour, leaving her three and five-year-old children and two dogs inside the vehicle with one window rolled down. An employee noticed the children in the vehicle and called 911. The children were unharmed. Defendant told the responding officers that she had been inside the store for only 10 to 15 minutes and later claimed that she did not realize that she had remained inside the store so long due to the effects of medication she had taken.

The Barry County Prosecutor charged defendant with two misdemeanor counts of leaving a "child unattended in a vehicle for a period of time that poses an unreasonable risk of harm or injury to the child or under circumstances that pose an unreasonable risk of harm or injury to the child." MCL 750.135a(1), (2)(a). Before trial in the district court, defendant argued that MCL 750.135a is a general intent offense and that she should be permitted to defend against the

charges with evidence of lack of criminal intent. In the event that the court deemed the offense to sound in strict liability, defendant requested a special jury instruction that her medication rendered her incapable of voluntarily leaving her children in the car for an extended period—the "voluntariness" defense. The district court denied both requests, finding that the statute created a strict liability offense and that defendant's voluntariness defense was no different than diminished capacity, a defense no longer recognized in Michigan to negate intent. See *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008).

Defendant filed an interlocutory application for leave to appeal the district court's order to the circuit court. Although the circuit court took some procedural twists and turns, it ultimately affirmed the district court's conclusion that MCL 750.135a is a strict liability statute. The circuit court ruled that defendant could present evidence before the district court to support that her actions were not voluntary and the district court could then determine whether there was sufficient evidence to present a voluntariness defense to the jury.

We granted defendant's interlocutory application for leave to appeal these rulings. *People v Haveman*, unpublished order of the Court of Appeals, entered December 13, 2018 (Docket No. 344825). Defendant's trial has been on hold in the meantime.

## II. GUIDING LEGAL PRINCIPLES

"Whether the Legislature intended a statute to impose strict liability or intended it to require proof of criminal intent is a matter of statutory interpretation," which we review de novo. *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013). As described in *Janes*, 302 Mich App at 41:

> Under Michigan's common law, every conviction for an offense required proof that the defendant committed a criminal act (actus reus) with criminal intent (mens rea). Criminal intent can be one of two types: the intent to do the illegal act alone (general criminal intent) or an act done with some intent beyond the doing of the act itself (specific criminal intent). Thus, when a statute prohibits the willful doing of an act, the act must be done with the specific intent to bring about the particular result the statute seeks to prohibit. [Cleaned up.[1]]

Stated differently, "the distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act." *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983).

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

In contrast, a strict-liability offense is one in which the prosecution need only prove beyond a reasonable doubt that the defendant committed the prohibited act, regardless of the defendant's intent and regardless of what the defendant actually knew or did not know. . . . [W]hether the Legislature intended to enact a strict-liability offense is generally a matter of statutory interpretation. In determining whether the Legislature intended to dispense with criminal intent, our Supreme Court has adopted the analytical framework first stated by the United States Supreme Court in *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952). [*Janes*, 302 Mich App at 41-42 (cleaned up).]

The Michigan Supreme Court adopted the *Morissette* analysis in *People v Quinn*, 440 Mich 178; 487 NW2d 194 (1992). Under this framework, "where the criminal statute is a codification of the common law, and where mens rea was a necessary element of the crime at common law," courts will interpret statutes as including "knowledge as a necessary element," even where the Legislature fails to include such language. *Id*. at 185-186. On the other hand,

where the offense in question does not codify a common-law offense and the statute omits the element of knowledge or intent, the United States Supreme Court examines the intent of the Legislature to determine whether it intended that knowledge be proven as an element of the offense, or whether it intended to hold the offender liable regardless of what he knew or did not know. [*Id*. at 186.]

Strict liability is a necessary basis for sanction because "public policy requires that certain acts or omissions to act be punished regardless of the actor's intent." *Id*. at 186-187. A strict liability statute "regulates conduct under the state's police power to promote the social good, a course the Legislature may elect without requiring mens rea." *Id*. at 187. Dispensing with mens rea "also comports with the purpose of public welfare regulation to protect those who are otherwise unable to protect themselves by placing 'the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger.' " *Id*., quoting *United States v Dotterweich*, 320 US 277, 281; 64 S Ct 134; 88 L Ed 48 (1943). Ultimately,

the United States Supreme Court, in interpreting legislative intent regarding the element of fault, has applied an analytical frame-work that considers each separate element of the statute. Statutes creating strict liability regarding all their elements are not favored. However, where a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability[.] In such a case, the Legislature is not imposing liability without any fault at all; instead, it has determined that regarding that element, responsibility for the protection of the public should be placed on the person who can best avoid the harm sought to be prevented—the actor himself. [*Quinn*, 440 Mich at 187-188 (cleaned up).]

Strict liability for a criminal offense is disfavored, however, based on the axiom that "wrongdoing must be conscious to be criminal." See *Rambin v Allstate Ins Co*, 495 Mich 316, 327; 852 NW2d 34 (2014); *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005); *Quinn*, 440 Mich at 185. That principle explains why "courts will infer an element of criminal intent when an offense is silent regarding mens rea unless the statute contains an express or implied

indication that the legislative body intended that strict criminal liability be imposed." *People v Kowalski*, 489 Mich 488, 499 n 12; 803 NW2d 200 (2011).

But "true strict liability crimes are proper under some circumstances." *Quinn*, 440 Mich at 188. "Examples of strict liability offenses include narcotics laws, traffic laws, adulterated food or drug laws, criminal nuisances, and liquor control laws." *People v Pace*, 311 Mich App 1, 8; 874 NW2d 164 (2015). MCL 750.165, proscribing failure to financially support one's child, has been declared a strict liability offense, *People v Likine*, 492 Mich 367, 392; 823 NW2d 50 (2012), as has Michigan's statutory rape statute, MCL 750.520d(1)(a), *People v Cash*, 419 Mich 230, 242; 351 NW2d 822 (1984). Relevant to determining whether the Legislature intended to make an offense strict liability is

(1) whether the statute is a codification of common law; (2) the statute's legislative history or its title; (3) guidance to interpretation provided by other statutes; (4) the severity of the punishment provided; (5) whether the statute defines a public-welfare offense, and the severity of potential harm to the public; (6) the opportunity to ascertain the true facts; and (7) the difficulty encountered by prosecuting officials in proving a mental state. [*People v Adams*, 262 Mich App 89, 93-94; 683 NW2d 729 (2004).]

III. ANALYSIS

The statute at issue in this case, MCL 750.135a, provides in relevant part:

(1) A person who is responsible for the care or welfare of a child shall not leave that child unattended in a vehicle for a period of time that poses an unreasonable risk of harm or injury to the child or under circumstances that pose an unreasonable risk of harm or injury to the child.

MCL 750.135a was enacted by 2008 PA 519, effective April 1, 2009. It did not codify a common-law offense. It does not include language regarding "the element of knowledge or intent." *Quinn*, 440 Mich at 186. Accordingly, we must "examine[] the intent of the Legislature" regarding the intent necessary to be criminally liable. *Id*.

"The primary goal of statutory construction is to give effect to the Legislature's intent" and the first step in achieving that goal is to examine the statutory language. *McCormick v Carrier*, 487 Mich 180, 191; 795 NW2d 517 (2010). Looking solely at the language of the statute, it is not plain and clear that the Legislature sought to impose liability regardless of intent. Subsection (1) directs what an individual "shall not" do. "The word 'shall' is generally used to designate a mandatory provision. Conversely, then, the term 'shall not' may be reasonably construed as a prohibition." *1031 Lapeer LLC v Rice*, 290 Mich App 225, 231; 810 NW2d 293 (2010). The mere fact that a certain act is prohibited, however, does not mean that the offense is strict liability. As noted, strict liability is disfavored and we "will infer an element of criminal intent" even where the Legislature omits such language "unless the statute contains an express or implied indication that the legislative body intended that strict criminal liability be imposed." *Kowalski*, 489 Mich at 499 n 12. See also *People v Lardie*, 452 Mich 231, 239; 551 NW2d 656 (1996), overruled in part on other grounds *People v Schaefer*, 473 Mich 418 (2005) ("In

interpreting a statute in which the Legislature has not expressly included language indicating that fault is a necessary element of a crime, this Court must focus on whether the Legislature nevertheless intended to require some fault as a predicate to finding guilt.").

*Adams*, 262 Mich App at 94, directs that the second factor to consider is "the statute's legislative history or title." "[W]e generally do not rely on legislative history." *People v Arnold*, 502 Mich 438, 453 n 9; 918 NW2d 164 (2018). However, the Supreme Court in *Quinn*, 440 Mich at 190, found it proper to examine legislative history where, as here, the subject offense "is a statutory creation, not *mala in se* but, rather, *mala prohibitum*."

MCL 750.135a was enacted by 2008 PA 519, HB 4872. It was considered along with 2008 PA 577, SB 158, which amended MCL 750.136b, the child abuse statute. The bills were intended to address situations in which children are left alone in a vehicle, especially on a hot day, but avoid injury. Senate Legislative Analysis, SB 158 & 760, HB 4872 & 4873 (February 13, 2009), p 1; House Legislative Analysis, HB 4372 & 4873 (February 3, 2009), p 1. The then-existing child abuse statute did not "address situations in which a person knowingly and intentionally places a child in a situation that is likely to cause physical harm to a child," such as by leaving the child alone in a hot vehicle, but the child is rescued before he or she is injured. Senate Legislative Analysis, p 1. PA 519 and 577 were designed to address those incidents "in which an intentionally abandoned child is discovered before suffering harm." House Legislative Analysis, p 2. Senate Legislative Analysis, p 4, addressed the concern that the acts "might be enforced too broadly. For instance, a parent or other adult might leave a child in a warm car on a cold day while the adult runs into a store for just a couple of minutes," by noting:

> To be charged, prosecuted, and convicted, a person knowingly or intentionally will have to commit an act that, under the circumstances, poses an unreasonable risk of harm or injury. In all criminal cases, police, prosecutors, the judge, and jurors apply their discretion and judgment throughout the criminal justice process. If any of those individuals determines that the defendant did not knowingly or intentionally commit an act that, under the circumstances, posed an unreasonable risk of harm or injury to a child, the person will not be held criminally liable. It stands to reason that the conditions under which a child was left in a car . . . and the reasonableness of the person's actions will be factors to consider at each stage of a criminal case. [*Id*.]

House Legislative Analysis, p 5, addressed the concern that "busy parents who, when overwhelmed, forget that their child is in the car" will be punished because HB 4872 "doesn't restrict the application of the penalties to those cases in which the parent knowingly and intentionally" leaves the child. The House Analysis indicated that the element requiring "the adult meet a level of posing 'unreasonable risk of harm or injury' . . . should suffice in distinguishing between unwise actions from those that are harmful or potentially harmful." *Id*. Moreover, the House Analysis opined, the prosecutor "would have discretion" whether to levy charges where the adult's actions were "truly . . . accidental." *Id*. The fiscal agencies for the Michigan Senate and House thereby seemed to disagree regarding the level of intent the Legislature proposed as necessary to commit this crime.

The third factor, "guidance to interpretation provided by other statutes," *Adams*, 262 Mich App at 94, leads us to review MCL 750.135a's parent statute, MCL 750.135. Subsection (1) of that statute provides:

> Except as provided in subsection (3), a father or mother of a child under the age of 6 years, or another individual, who exposes the child in any street, field, house, or other place, *with intent* to injure or wholly to abandon the child, is guilty of a felony, punishable by imprisonment for not more than 10 years. [Emphasis added.]

The statutes following MCL 750.135a similarly provide for the protection of children. MCL 750.136(1) provides that "[a] person shall not *knowingly*" mutilate a minor female's genitalia. (Emphasis added.) MCL 750.136a(1) and (2) proscribe "*knowingly* transport[ing]" a minor across state lines for a female genital mutilation procedure, or "*knowingly* facilitat[ing]" such transport. (Emphasis added.) MCL 750.136b proscribes child abuse in general: "A person is guilty of child abuse in the first degree if the person *knowingly or intentionally* causes serious physical or serious mental harm to a child." MCL 750.136b(2) (emphasis added).

The child protective statutes surrounding MCL 750.135a include descriptive intent elements. They are specific intent offenses. As described in *People v Culp*, 108 Mich App 452, 455; 310 NW2d 421 (1981), quoting *Roberts v People*, 19 Mich 401, 414 (1870): "Specific intent is a nebulous concept" and " '[w]hen a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury, as matter of fact, before a conviction can be had.' " This Court has determined that MCL 750.135 represents a specific intent crime. See *People v Schaub*, 254 Mich App 110, 115-116; 656 NW2d 824 (2002) (noting that a parent must have the specific intent to abandon his or her child in order to meet the elements of the offense). We have also found first-degree child abuse as proscribed by MCL 750.136b(2) to require specific intent. See *People v Maynor*, 256 Mich App 238, 241; 662 NW2d 468 (2003).

The absence of intent language in MCL 750.135a, when compared to its neighboring child protective statutes, does not indicate a strict liability offense, but more likely suggests the Legislature's intent to create a general intent crime.[2]

---

[2] An examination of the laws of our sister states uncovered 15 other states that permit charges when a caregiver leaves a child unattended in a vehicle without fatality—California, Connecticut, Florida, Hawaii, Illinois, Louisiana, Maryland, Nebraska, Nevada, Oklahoma, Pennsylvania, Tennessee, Texas, Utah, and Washington. Eight of those statutes include language of intent and caselaw in a ninth state implies an intent element. See Conn Gen Stat 53-21a; 720 Ill Comp Stat 5/12-21.6; Neb Rev Stat 28-710; Nev Rev Stat 202.575; Tenn Code Ann 55-10-803; Tex Penal Code Ann 22.10; Utah Code Ann 76-10-2202; Wash Rev Code 46.61.685. See also *Commonwealth v Bryant*, 2012 PA Super 257; 57 A3d 191, 197 (2012).

The next consideration is "the severity of the punishment provided." *Adams*, 262 Mich App at 94. MCL 750.135a(2) provides for varying levels of punishment depending on the harm caused to the child:

> (a) Except as otherwise provided in subdivisions (b) to (d), the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

> (b) If the violation results in physical harm other than serious physical harm to the child, the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

> (c) If the violation results in serious physical harm to the child, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both.

> (d) If the violation results in the death of the child, the person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

Although defendant was charged with a 93-day misdemeanor offense under subsection (2)(a) as no harm befell her children, the offense could carry a 15-year prison term. This also tends to suggest that MCL 750.135a has an element of general intent.

MCL 750.135a does not proscribe a public welfare offense. See *Adams*, 262 Mich App at 94. A public welfare offense is one that "punish[es] conduct contrary to the interest of public safety." *People v Trotter*, 209 Mich App 244, 247; 530 NW2d 516 (1995). As described in *Morissette*, 342 US at 252-255, public welfare regulations are intended to control dangers caused by "the industrial revolution, increased traffic, the congestion of cities, and the wide distribution of goods." *Pace*, 311 Mich App at 7. Leaving a child unattended in a car does not fit within the parameters of a public welfare offense, leaning in favor of implying a general intent requirement.

However, as noted in *Schumacher*, 276 Mich App at 169, *Morissette*, 342 US at 251 n 8, "recognized exceptions to this rule of statutory construction: for example, sex offenses, such as rape, and offenses of negligence, such as involuntary manslaughter or criminal negligence and the whole range of crimes arising from omission of duty." (Cleaned up.) Under this exception, statutory rape is a strict liability crime in Michigan even though it is not a public welfare offense and carries stiff penalties. *Lardie*, 452 Mich at 256 n 40. The denial of a mistake-of-age defense "has been upheld as a matter of public policy because of the need to protect children below a specified age from sexual intercourse on the presumption that their immaturity and innocence prevents them from appreciating the full magnitude and consequences of their conduct." *Cash*, 419 Mich at 242. The Legislature may have intended to protect in the same manner young children who cannot protect themselves from their parents' intentional decisions or accidental mishaps of leaving them alone in hot cars.

The sixth factor is the *defendant's* "opportunity to ascertain the true facts." *Adams*, 262 Mich App at 94. See also *Quinn*, 440 Mich at 198; *Schumacher*, 276 Mich App at 174. In this case, defendant could have easily ascertained "the true facts" and avoided committing this act.

Defendant need only have looked in her backseat to realize that her children were in the car, stepped outside to perceive the temperature on that July day, and looked at her watch to determine how long she had left her children unattended. The sixth factor is considered in conjunction with the seventh and final factor—"the difficulty encountered by prosecuting officials in proving a mental state." *Adams*, 262 Mich App at 94. This factor weighs in favor of imposing an element of general intent. "Proving an actor's state of mind is difficult in virtually all criminal prosecutions. Indeed, this recognized difficulty has led to the rule that minimal circumstantial evidence is sufficient to establish a defendant's state of mind." *People v Nasir*, 255 Mich App 38, 45; 662 NW2d 29 (2003) (cleaned up). It would be no more difficult for the prosecutor to establish a defendant's state of mind in violating MCL 750.135a as any other statute. We discern no special consideration in this regard requiring the imposition of strict liability.

Considering the totality of the factors outlined in *Adams*, we believe the Legislature intended to make MCL 750.135a a general intent crime. This intent can be implied despite the absence of language in the statute because strict liability offenses are disfavored and MCL 750.135a primarily bears the hallmarks of an offense requiring some level of intent. Therefore, in order to be convicted of leaving a child unattended in a vehicle and posing an unreasonable risk of harm, a defendant must have a general intent to do the proscribed physical act. The district and circuit courts erred by treating the offense as sounding in strict liability.[3]

We reverse and remand to the district court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[3] Given our resolution of the statutory interpretation issue, we need not consider defendant's second claim—that the lower courts erroneously considered the applicability of the voluntariness defense. That defense applies only to strict liability offenses. See *Likine*, 492 Mich at 393-394.