Marilyn Kelly, J.
(dissenting). The majority advises that its view of parental responsibility and obligations leads it to adopt a new defense to the charge of felony nonsupport, the defense of impossibility to pay. I share the majority’s view of the responsibilities and obligations of parents. But there is an important difference between us. It lies in our respective interpretations of what defense MCL 750.165 allows a parent facing imprisonment for failing to pay child or spousal support. For reasons I will describe, I believe that the interests of children, as well as of all other members of society, are best served by providing a more traditional defense. I propose the almost universally accepted defense of inability to pay.
*421 At their essence, these cases are about the basic judicial task of ensuring that government functions within the scope of our state and federal constitutions. Our sister states have been conscientious in undertaking this task. Forty-nine of them and the District of Columbia provide the defense of inability to pay or consider a defendant’s ability to pay as an element of the crime of felony nonsupport. Conventional wisdom suggests that the Michigan Supreme Court should adopt the same defense when it considers the question for the first time. It has not done so.
Instead, the majority rejects the national norm and bucks the trend. It concludes that inability to pay does not constitute a defense to felony nonsupport. The defendant must demonstrate impossibility to pay. Moreover, notwithstanding the majority’s protestations to the contrary, the inability-to-pay defense is not subsumed within this defense of impossibility to pay. The majority will indeed consider inability to pay. But should any fault whatsoever be shown on the part of the accused, the majority’s impossibility-to-pay defense will entirely disregard the strongest evidence of inability to pay. I believe that this standard, at once unique and manifestly harsh, will prove counterproductive. I also believe it is unconstitutional.
Like the majority, I wish to be faithful to the intent of the Legislature in interpreting MCL 750.165. In doing so, I am deeply concerned that we will reinstitute the wisely long-abandoned institution of debtor’s prisons. The majority appears to lack this concern.
Furthermore, the majority’s “analysis” supporting its impossibility-to-pay defense is flawed from the first page. In crafting it, the majority repeatedly bows to what it declares is the Legislature’s expressed intent. But no expressed justification for the majority’s posi *422 tion is to be found anywhere in any statute. For all of these reasons, I respectfully dissent.
I. ANALYSIS
A. LEGAL BACKGROUND
These cases involve the failure of three defendants to satisfy court-ordered child support obligations. MCL 750.165 criminalizes such conduct.[1] It provides, in relevant part:
(1) If the court orders an individual to pay support for the individual’s former or current spouse, or for a child of the individual, and the individual does not pay the support in the amount or at the time stated in the order, the individual is guilty of a felony punishable by imprisonment for not more than 4 years or by a fine of not more than $2,000.00, or both.
(2) This section does not apply unless the individual ordered to pay support appeared in, or received notice by personal service of, the action in which the support order was issued.
(4) The court may suspend the sentence of an individual convicted under this section if the individual files with the court a bond in the amount and with the sureties the court requires. At a minimum, the bond must be conditioned on the individual’s compliance with the support order. If the court suspends a sentence under this subsection and the individual does not comply with the support order or another condition on the bond, the court may order the *423 individual to appear and show cause why the court should not impose the sentence and enforce the bond. After the hearing, the court may enforce the bond or impose the sentence, or both, or may permit the filing of a new bond and again suspend the sentence.
Although I agree with the majority that MCL 750.165 sets forth a strict liability offense, persons accused of felony nonsupport still have the constitutionally guaranteed right, both state and federal, to present a defense.[2] As the United States Supreme Court has recognized, this guarantee rests on a bedrock constitutional principle: “Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense.”[3] However, the majority severely narrows an accused’s constitutionally protected “complete defense” to charges of felony nonsupport. It requires a showing of impossibility to pay. It is this conclusion to which I take exception.
Thirty-five years ago in People v Ditton,[4] the Court of Appeals considered an earlier version of MCL 750.165.[5] *424 The defendant argued that his inability to pay barred his prosecution under the statute. He further argued that the trial court had erred by failing to instruct the jury that it must first find that he was able to pay the support ordered. Only then could it find that he had neglected to pay it. The Court of Appeals agreed. It concluded that MCL 750.165 did not expressly provide for the defense of inability to pay, but “[o]ther Michigan criminal nonsupport statutes [made] it necessary to show defendant’s ability to pay” as a precursor to obtaining a conviction.[6]
The Court also noted that in contempt proceedings, a party charged with paying child support must be allowed to explain why the support order had not been obeyed and that only “ ‘the wilful, the recalcitrant, the obdurate or deceitful’ . . . are not excused from their legal obligations.”[7] Therefore, the Court concluded, the trial court erred when it ruled that the defendant’s ability to pay was irrelevant.[8]
*425 The version of MCL 750.165 now in effect was enacted in 1999[9] and is similar to the earlier version. The current version still criminalizes failure to comply with support obligations and specifically indicates the maximum penalty for violations of the statute. The legislative history indicates that the purpose of the revisions was to enact gender-neutral language and provide courts with authority to suspend a sentence under certain circumstances. The Senate Fiscal Agency’s analysis stated that the revisions
would delete and reenact, with gender-neutral language, a provision of the Penal Code making refusal to pay a support order a felony. Under the bill, it would be a felony, punishable by up to four years’ imprisonment, a maximum fine of $2,000, or both, for a person subject to a court order for spousal or child support, to fail to pay the support in the amount or at the time stated in the order. The felony provision would not apply unless the person ordered to pay support appeared in the action in which the support order was issued, or received notice of that action by personal service. (The proposed penalty is the same as that established in the law for a felony for which a penalty is not otherwise specified.)
The court could suspend the sentence of a person convicted under the bill if he or she filed with the court a bond in the amount and with the sureties the court required. At a minimum, the bond would have to be conditioned on the person’s compliance with the support order. If the person did not comply with the support order or another condition of the bond, the court could order the person to appear and show cause why the court should not impose the sentence and enforce the bond. After the hearing, the court could enforce the bond and/or impose the sentence, or could permit the filing of a new bond and again suspend the sentence.[10]
*426 When the Legislature enacted the current version of MCL 750.165, Ditton had permitted defendants to raise an inability-to-pay defense to felony nonsupport charges for the preceding 22 years. Yet that defense was not addressed by 1999 PA 152.[11] The Legislature is presumed to know the law, including decisions of our courts.[12] Its acquiescence to Ditton is consistent with the intent to continue to allow an accused to raise an inability-to-pay defense.[13]
Notwithstanding that fact, in People v Adams,[14] the Court of Appeals strayed from Ditton and held that the *427 1999 amendments of MCL 750.165 affirmatively precluded a defendant from raising an inability-to-pay defense. Adams opined that the revised statute does not allow that defense because felony nonsupport is a strict liability offense.[15] It further reasoned that the defense would be inconsistent with the provision of MCL 750.165 that authorizes suspension of a sentence if the defendant files a bond conditioned on compliance.[16]
Adams held that defendants are effectively precluded from raising a defense of any kind to felony-nonsupport charges. I believe it was wrongly decided and should be explicitly overruled. It is unclear what the majority holds with respect to Adams. When it holds that defendants may present an impossibility-to-pay defense, it suggests that Adams was wrongly decided. But it agrees with Adams’s holding that, if an individual does not pay court-ordered support, he or she is automatically guilty of a felony under MCL 750.165. Adams should be unequivocally overruled.[17]
*428 B. THE MAJORITY’S IMPOSSIBILITY-TO-PAY DEFENSE
I find the impossibility-to-pay defense adopted by the majority problematic for several reasons. First, the term “impossibility” has a distinct meaning in criminal law. Courts have distinguished two categories of impossibility in attempt crimes: factual and legal. Factual impossibility exists when a defendant intended to perpetrate a certain crime but failed to commit it because of factual circumstances that were unknown or beyond his or her control.[18]
Legal impossibility can be broken down into two subcategories: pure legal impossibility and hybrid legal impossibility. Pure legal impossibility exists when an actor engages in conduct that he or she believes is prohibited by law, but it is not.[19] Hybrid legal impossibility exists when a defendant’s goal is to commit an illegal act, but it is impossible to do so because of a factual mistake regarding the legal status of some factor relevant to the intended conduct.[20] “ ‘This version of impossibility is a “hybrid” because, as the *429 definition implies . . ., [the defendant’s] impossibility-claim includes both a legal and a factual aspect.. . ”[21]
The cases involved here are not attempt crimes. Moreover, neither factual nor legal impossibility is involved. I discuss the terms merely to show that their use has a nuanced meaning in criminal law. They could easily be confused with the majority’s newly minted “impossibility-to-pay” defense in the context of felony nonsupport charges.[22]
A second problem with the majority’s analysis is that it is at best marginally supported by one Michigan case decided 123 years ago—Port Huron v Jenkinson.[23] Jenkinson dealt with a city ordinance that criminalized a property owner’s failure to repair a sidewalk adjacent to his property. The Court opined that “[n]o legislative or municipal body has the power to impose the duty of performing an act upon any person which it is impossible for him to perform, and then make his nonperformance of such a duty a crime .. . .”[24] Thus, the Court recognized that the defendant could successfully defend himself by arguing that it was impossible to comply with the ordinance. However, the Court also stated that
[i]t will readily be seen that a tenant occupying a house and lot in the city of Port Huron, and so poor and indigent as to receive support from his charitable neighbors, if required by *430 the city authorities to build or repair a sidewalk along the street in front of the premises he occupies, and fails to comply with such request, such omission becomes criminal; and, upon conviction of the offense, he may be fined and imprisoned. It is hardly necessary to say these two sections of the statute are unconstitutional and void, and that the provisions are of no force or effect.[25]
Thus, Jenkinson recognized that when a defendant is “so poor and indigent” as to be unable to comply with the ordinance, he or she may not be criminally punished. Accordingly, even though Jenkinson used the word “impossible” once, it implicitly considered the defendant’s inability to pay.
It is apparent that the majority overstates Jenkinson’s use of “impossible.” Jenkinson intended a much broader use of the word, one akin to inability to pay. If it had been shown that the defendant in Jenkinson could have used the “support from his charitable neighbors”[26] to build a sidewalk, he would not have satisfied an impossibility defense. He could not have demonstrated that it was impossible for him to pay. But the Jenkinson Court held the ordinance unconstitutional notwithstanding the defendant’s failure to apply this charitable support toward his sidewalk construction obligation. Therefore, the majority’s impossibility-to-pay standard fails the constitutional test established by Jenkinson. If the defendant in that case could not have satisfied the majority’s impossibility-to-pay defense, then that defense is unconstitutional.[27]
*431 Third, the majority ignores our Court of Appeals’ decision in Ditton. Ditton held that inability to pay is a defense that must be considered for MCL 750.165 to pass constitutional muster.[28] The majority fails to explain why Ditton would not render its impossibility-to-pay defense unconstitutional.
C. THE INABILITY-TO-PAY DEFENSE
1. MICHIGAN
The proper defense to felony nonsupport charges, as set forth in Ditton, consists of proving that a defendant is unable to pay the court-ordered support.[29] Ability-to- *432 pay determinations are commonplace in the legal system. For example, in People v Jackson,[30] we considered whether a trial court may require a defendant to pay for a court-appointed attorney pursuant to MCL 769.1k without first determining the defendant’s ability to pay. We unanimously held that notwithstanding the lack of statutoxy language providing for an assessment of a defendant’s ability to pay, that determination must be made when payment is required.[31] We further held that “once an ability-to-pay assessment is triggered, the court must consider whether the defendant remains indigent and whether repayment would cause manifest hardship.”[32]
Ability-to-pay assessments are also relevant in the context of criminal restitution payments. In People v Music,[33] this Court considered whether, in imposing restitution or costs as a part of sentence or probation, a defendant’s ability to pay must be considered. The Court again unanimously held that if a defendant asserts the inability to pay restitution or costs, the court must inquire into the defendant’s ability or lack of it.[34]
Not only does caselaw suggest that a defendant’s ability to pay must be considered when determining criminality or applying a penalty, but so do several statutes. MCL 750.161 criminalizes desertion or nonsupport of a spouse or children. It provides, in pertinent part:
*433 A person who deserts and abandons his or her spouse or deserts and abandons his or her children under 17 years of age, without providing necessary and proper shelter, food, care, and clothing for them, and a person who being of sufficient ability fails, neglects, or refuses to provide necessary and proper shelter, food, care, and clothing for his or her spouse or his or her children under 17 years of age, is guilty of a felony . .. [35]
Thus, a conviction under MCL 750.161 presupposes that the defendant has the ability to pay for proper shelter, food, care, and clothing for family members.
Similarly, MCL 750.168 provides that a person convicted of being “a disorderly person” is subject to varying degrees of punishment. MCL 750.167(1)(a) defines “disorderly person” as “[a] person of sufficient ability who refuses or neglects to support his or her family.”[36] This provision further reflects the Legislature’s recognition that a defendant’s ability to pay must be considered before imposing criminal punishment.
Ability-to-pay determinations also serve as the underpinning of spousal support awards, which, when violated, form the bases of criminal nonsupport charges. MCL 552.23(1) provides that in divorce and actions for separate maintenance, the court may also award spousal support “after considering the ability of either party to pay. . . ,”[37] This principle has been extended to child support awards.[38]
2. THE UNITED STATES SUPREME COURT
The United States Supreme Court has also recognized that statutes that punish persons for nonpayment *434 of debts without permitting them to present evidence of their inability to pay are repugnant to the Constitution. In Zablocki v Redhail,[39] the Court struck down as unconstitutional a Wisconsin statute that prohibited men with outstanding child support obligations from marrying without first obtaining a court order granting permission. The plaintiff in that case could not obtain the requisite court order because he lacked the financial resources to meet his support obligations. The Court struck down the statute on both due process and equal protection grounds. Justice Stewart, concurring, noted that the “law makes no allowance for the truly indigent” and that “[t]o deny these people permission to marry penalizes them for failing to do that which they cannot do. Insofar as it applies to indigents, the state law is an irrational means of achieving these objectives of the State.”[40]
Concurring in the Court’s judgment, Justice Powell distinguished between “persons who are able to make the required support payments but simply wish to shirk their moral and legal obligation” and those “without the means to comply with child-support obligations.”[41] He opined that “[t]he vice inheres, not in the collection concept, but in the failure to make provision for those without the means to comply with child-support obligations.”[42] Thus, he agreed with his colleagues that the Wisconsin statute was unconstitutional because it failed to provide for those unable, rather than merely unwilling, to pay the child support owed.[43]
*435 Likewise, in Bearden v Georgia,[44] the United States Supreme Court considered whether the Fourteenth Amendment prohibits a state from revoking an indigent defendant’s probation for failure to pay a fine and restitution. The Court held that “the trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist.”[45] The Court opined that to revoke probation when the petitioner, through no fault of his own, could not pay the fine violated due process because it was “contrary to the fundamental fairness required by the Fourteenth Amendment.”[46] The Court approvingly cited Justice Powell’s Zablocki concurrence, which emphasized the distinction between “persons who shirk their moral and legal obligation to pay . . . from those wholly unable to pay.”[47]
*436 3. APPLICATION OF THE INABILITY-TO-PAY DEFENSE
In light of the aforementioned Michigan caselaw, Michigan statutes, and United States Supreme Court precedent, I would hold that inability to pay is the proper defense to a felony nonsupport charge. To use this defense, a defendant would have to show that he or she has made all reasonable and good-faith efforts to comply with the support order, but could not.[48] In considering a defendant’s inability to pay, courts should carefully examine the defendant’s financial situation and determine whether the defendant has made sufficient bona fide efforts to comply.[49] However, courts must distinguish between those who willfully shirk their moral and legal obligation to pay and those who are simply unable to do so.[50] As our Court of Appeals explained in Ditton:
“A [parent] who can but will not take care of his [or her] child ought not be coddled by the law. But oppression ought not be practiced in the name of law and justice....
“The accused delinquent parent may have been ever so willing and anxious to perform his [or her] natural duty and to comply with the terms of the civil judgment but was wholly unable to do so.”[51]
To be clear, I share the majority’s concern that recalcitrant parents must be held accountable. Accord *437 ingly, the inability-to-pay defense, like the impossibility-to-pay defense set forth by the majority, would not apply to parents who can but choose not to take care of their children. A willful failure to pay is not an excuse for noncompliance with a support order.
D. THE MAJORITY’S IMPOSSIBILITY-TO-PAY DEFENSE LACKS SUPPORT
With today’s groundbreaking opinion, Michigan becomes the only state that does not allow a defendant’s inability to pay to constitute a complete defense to a felony nonsupport charge.[52] The majority has created *438 an exceedingly limited defense to felony nonsupport *439 charges not recognized by any legislature or any other *441 court in the country.[53] Not a single state recognizes impossibility as the proper defense to felony nonsupport charges. The majority’s decision risks being criticized as a chilling example of judicial activism.
E. THE MAJORITY’S IMPOSSIBILITY-TO-PAY DEFENSE IS UNFAIR
My deep concern about the majority’s holding stems not only from the fact that it adopts an unprecedented standard without support, but also from that standard’s potential for deleterious effects. More pointedly, I fear a return to an era of debtors’ prisons in which indigent individuals are imprisoned simply because they cannot meet their financial obligations.[54] The majority refuses *442 to acknowledge that, unfortunate as it is, many people experience periods in their lives when they are insolvent. This fact does not automatically render them uncaring, deadbeat parents. And it should not necessarily render them criminals. Poverty is not a criminal offense, and our federal and state constitutions guarantee the impoverished the equal protection of the laws.[55] The majority’s severe narrowing of the available defense to a nonsupport charge does not adequately safeguard these principles.
In its effort to differentiate its impossibility-to-pay defense from an inability-to-pay defense, the majority paints a picture in which the only two options are at the extreme ends of the spectrum. On one end is the impossibility-to-pay defense, which is, as the majority admits, nearly impossible to meet. On the other is the inability-to-pay defense, which the majority mischaracterizes as cover for a simple refusal to pay. The majority mistakenly casts the inability-to-pay defense as one that gives carte blanche to cold-hearted parents who refuse to support their children, contrary to all moral decency. The reality is quite otherwise. As discussed earlier, in applying this defense, a court typically considers evidence of ability to pay and refusals to pay by those who could pay or could raise the money they owe.
The majority also identifies the most extreme example of a parent who would find it impossible to comply with a support obligation but is completely blameless. It posterizes this hypothetical person as the quintessential example of someone who would satisfy its new impossibility-to-pay defense. In doing so, the *443 majority sends a clear signal to our lower courts: our impossibility-to-pay defense exists, but only the rarest of persons will qualify for it.[56] In essence, the majority has created a nearly-impossible-to-satisfy defense. The practical effect of this rule is to press a heavy thumb on the prosecutor’s side of the delicate scales of justice.[57]
In an effort to provide comprehensive guidance, the majority creates an impossibility standard that offends traditional notions of fairness and common sense. For example, it does not take into consideration that a defendant must have sufficient minimum resources to feed, clothe, and shelter himself or herself while satisfying a support obligation. The penniless person should not be imprisoned for lacking the capacity to prioritize his or her finances or to arrange his or her financial affairs with future contingencies in mind. Yet the majority’s impossibility-to-pay defense would include that person. That person would be imprisoned because, although he or she is unable to pay, it might not have been utterly impossible to pay had he or she known how to manage money better.[58] That person would be imprisoned because, unable to pay, he or she had failed to *444 “seek timely modification of the family court order when it became evident that it could not be performed . . . .”[59] The majority offers no explanation why inability to pay, coupled with failure to seek modification of the order, should constitute grounds for imprisonment.
Furthermore, the majority seems not to consider the difficulty in producing sufficient evidence to mount a cognizable impossibility-to-pay defense. Proving an inability to pay, let alone satisfying the majority’s impossibility-to-pay defense, is a complex and daunting legal matter. As one scholar has astutely observed:
Proving inability to comply can be factually complex, implicating the economic circumstances of the obligor, his *445 work history and potential, his available assets, and his own subsistence needs. To meet this burden, the alleged contemnor must at the veiy least present evidence of his or her employment (or lack thereof), wages, expenses, and assets.
However, gauging the ability to pay may be much more complicated than this, involving issues of good faith responsibility for other obligations, voluntariness of the obligor’s unemployment or underemployment, and the availability of borrowed funds or assets owned by others to satisfy the obligor’s debt. There may be legal as well as factual components to these issues. The complexity of these issues puts them beyond the understanding of most indigents, who will rarely be able to effectively respond to the petitioner’s case in these areas, much less present a case in chief of their own. Even the simplest “inability to pay” argument requires articulating the defense, gathering and presenting documentary and other evidence, and responding to legally significant questions from the bench — tasks which are probably awesome and perhaps insuperable undertakings to the uninitiated layperson. This is particularly true where the layperson is indigent and poorly educated.
Adding to the obligor’s burden is the potential that the court will hold his or her testimony concerning inability to pay to be insufficient evidence or lacking in credibility in the absence of documentary corroboration. Retention of the necessary records among indigents is rare, particularly given the widespread instability in their employment, housing, and other aspects of their lives.[60]
Permitting only an impossibility-to-pay defense rather than an inability-to-pay defense heightens the level of evidence needed to refute a nonsupport charge. In a practical sense, it erects a barrier that will prove overwhelming to many who are not willful, recalcitrant, obdurate, or deceitful.
*446 F.'THE MAJORITY’S IMPOSSIBILITY-TO-PAY DEFENSE IS UNCONSTITUTIONAL
Finally, the majority supports its impossibility-to-pay defense by suggesting that because family courts consider ability to pay when setting support obligations, by definition a support obligor is able to pay. There is much to criticize in this logic. It must be remembered that, because family court proceedings are civil in nature, they do not require the same high level of due process as criminal proceedings. They lack certain fundamental constitutional safeguards, including the right to trial by jury, the beyond-a-reasonable-doubt standard of proof, the right to counsel, and the right to effective assistance of counsel.[61] By allowing into evidence a family court’s judgment regarding a defendant’s ability to pay, the majority would allow evidence that has not been subjected to the constitutional rigors of a criminal trial. Doing so would threaten due process protections by undercutting the presumption of innocence and shifting onto defendants the burden of disproving the actus reus of the crime.[62]
In civil proceedings to set child support, trial courts employ a preponderance-of-the-evidence standard to make factual findings regarding a parent’s ability to pay.[63] These ability-to-pay determinations include find *447 ings of imputed income based on an individual’s potential earning capacity.[64] Ability-to-pay determinations are thus inherently linked to the actus reus of a subsequent criminal nonsupport charge.
But it is axiomatic that all elements of a criminal charge must be proved beyond a reasonable doubt.[65] The preponderance-of-the-evidence standard used in civil courts affords less protection than the constitutionally guaranteed beyond-a-reasonable-doubt standard of proof used in criminal courts.[66] By importing into a criminal proceeding a civil court’s ability-to-pay determination and shifting the burden of proof to the defendant to show impossibility to pay, the majority endangers due process. Ability-to-pay determinations made in a civil court cannot constitutionally be used as the basis for establishing that a defendant was able to pay in a criminal case. Doing so diminishes the prosecution’s burden of proof to a standard below the constitutional threshold.[67]
*448 Furthermore, the majority injects principles of statutory interpretation as support for its impossibility-to-pay defense. It repeats throughout its opinion phrases such as “[c]onsistent[] with the Legislature’s expressed intent in the child support statutes”[68] and its unsupported claim that my analysis would “undermine Michigan’s legislative system . . . ,”[69] It similarly relies on its assertion that its interpretation is “consistent with the plain language of [the] statute . . . .”[70] Frequent repetition of these concepts does not turn the majority’s assertions into facts. To be sure, an “interpretation” of a statute’s plain language can nonetheless lead to an activist result.[71] As previously stated, there is no statutory language in MCL 750.165, express or implied, or in the child support statutes, that gives rise to an impossibility-to-pay defense.[72]
More importantly, the Legislature’s intent with respect to the constitutionally mandated defense to a charge of felony nonsupport is extraneous. It is undisputed that some defense must be made available for MCL 750.165 to survive constitutional scrutiny. However, it is not the prerogative of the Legislature to set that constitutional floor. Rather, it is this Court’s duty *449 to determine what defense, at a minimum, must be made available in order for the statute to be constitutionally applied. By allowing the purported legislative intent to dictate its outcome, the majority abdicates its duty as guardian of our citizens’ constitutional protections.
II. CONCLUSION
In sum, the majority’s new impossibility-to-pay defense creates a nearly insurmountable barrier to successfully defending felony nonsupport charges. As Michigan has long recognized, it is only “the willful, the recalcitrant, the obdurate or deceitful” who are imprisoned for failing to meet their financial obligations.[73] In light of the majority’s holding, we can now add to that list those who are unable to pay and cannot obtain the resources to pay. I believe that the majority’s impossibility-to-pay defense will prove grossly unjust in its application and that it is fundamentally unconstitutional. Because a defendant’s inability to pay is the proper defense to a felony nonsupport charge, I respectfully dissent.
CAVANAGH and HATHAWAY, JJ., concurred with MARILYN Kelly, J.

 I find it noteworthy that those responsible for publishing Michigan’s statutes found it appropriate to caption this provision in terms of penalizing a refusal to pay. See 2 Public & Local Acts of Michigan (2004 Session), 2004 PA 570, p 2259 (“Refusing to support wife or children”); see also MCLA 750.165 (“Refusal to pay support for former or current spouse”) and MCLS 750.165 (“Refusing to support wife or children”).

 See US Const, Ams VI and XIV; Const 1963, art 1, §§ 13, 17, and 20.

 California v Trombetta, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984).

 People v Ditton, 78 Mich App 610; 261 NW2d 182 (1977).

 When Ditton was decided, MCL 750.165 provided:
Where in any decree of divorce, or decree of separate maintenance granted in this state, or by order entered during the pendency of any such proceedings, if personal service is had upon the husband or upon the father of any minor child or children, under the age of 17 years, or such husband or father shall have entered an appearance in such proceedings either as plaintiff or defendant, the court shall order such husband to pay any amount to the clerk or friend of the court for the support of any wife or former wife who by reason of any physical or mental *424 affliction is unable to support herself, or father to pay any amount to the clerk or friend of the court for the support of such minor child or children, and said husband or father shall refuse or neglect to pay such amount at the time stated in such order and shall leave the state of Michigan, said husband or father shall be guilty of a felony: Provided, however, If at any time before sentence he shall enter into bond to the people of the state of Michigan, in such penal sum and with such surety or sureties as the court may fix, conditioned that he will comply with the terms of such order or decree, then the court may suspend sentence therein: Provided further, That upon failure of such person to comply with said undertaking he may be ordered to appear before the court and show cause why sentence should not be imposed, whereupon the court may pass sentence, or for good cause shown may modify the order and take a new undertaking and further suspend sentence as may be just and proper.

 Ditton, 78 Mich App at 614-615.

 Id. at 617, quoting Reed v Reed, 53 Mich App 625, 627; 220 NW2d 199 (1974).

 Id. at 617.

 See 1999 PA 152.

 Senate Bill Analysis, HB 4826, October 12, 1999, p 1.

 The majority claims that I miss the point that “any defense to a charge of felony nonsupport must be assessed on the basis of some . . . articulable standard!, which] was not overlooked by ... the legislatures that enacted the statutes [I] citef] . ...” Ante at 418 n 108 (emphasis omitted). It is unclear whether the majority is referring to (1) my citation of every other state’s consideration of a defendant’s inability to pay in note 52 of this opinion or (2) the current and former versions of Michigan’s statute. If the majority is referring to every other state’s consideration of inability to pay, then it must acknowledge that those states have decided that inability to pay is a consistent and articulable standard. If the majority is referring to the current and former versions of Michigan’s nonsupport statutes, then its claim is simply inaccurate. Neither the current nor the former version of MCL 750.165 has ever expressly provided a defense to a charge of felony nonsupport.

 Ford Motor Co v City of Woodhaven, 475 Mich 425, 439-440; 716 NW2d 247 (2006).

 The majority observes that it holds the doctrine of legislative acquiescence in disfavor. Yet it cannot deny that the Legislature made no effort to alter Ditton’s holding for 22 years. Moreover, the doctrine of legislative acquiescence has established roots in both United States Supreme Court and Michigan jurisprudence. See, e.g., Shepard v United States, 544 US 13, 23; 125 S Ct 1254; 161 L Ed 2d 205 (2005); Craig v Larson, 432 Mich 346, 353; 439 NW2d 899 (1989); Wikman v City of Novi, 413 Mich 617, 638; 322 NW2d 103 (1982); In re Clayton Estate, 343 Mich 101, 106-107; 72 NW2d 1 (1955). The majority cannot deprive the minority of the tools with which judges typically and traditionally engage in statutory interpretation. Its preferred interpretive methods do not bind other members of the Court. See People v Williams, 491 Mich 164, 194 n 31; 814 NW2d 270 (2012) (Marilyn Kelly, J., dissenting).

 People v Adams, 262 Mich App 89; 683 NW2d 729 (2004).

 Id. at 100.

 Id. at 97, citing MCL 750.165(3), now MCL 750.165(4). See 2004 PA 570. The majority posits that my analysis would return the law to its state before the Legislature enacted 1999 PA 152, “contrary to the Legislature’s clear intent.” Ante at 411. This statement masks the fact that no statutory evidence exists that the Legislature intended to remove the inability-to-pay defense that Ditton recognized. Nor is there language in MCL 750.165 or in any other statute that supports the majority’s impossibility-to-pay defense. By sleight of pen, the majority parlays its reading of MCL 750.165 and of the Legislature’s intent into support for an impossibility-to-pay defense. Thus, contrary to the majority’s claim otherwise, there can be no analysis “based on the plain language of the statute,” ante at 416 n 104, because MCL 750.165 provides no defense to a charge of felony nonsupport.

 Rather than limit its discussion to the merits, the majority claims that my analysis of the Legislature’s acquiescence to Ditton is merely my “policy preference.” Ante at 411 n 96. It argues that, after the Court of Appeals’ opinion in Adams, the doctrine of legislative acquiescence could also lead one to conclude that the Legislature intended to eliminate *428 inability to pay as a defense. This is incorrect. Adams effectively precluded all defenses to nonsupport charges, including the impossibility-to-pay defense now sanctioned by the majority, and it is thus unconstitutional. It cannot be assumed that the Legislature agreed with an unconstitutional decision. The doctrine of legislative acquiescence does not fit with the Adams decision.

 People v Thousand, 465 Mich 149, 158; 631 NW2d 694 (2001) (citation omitted). For example, a factual impossibility occurs when a pickpocket picks an empty pocket. See Black’s Law Dictionary (9th ed), p 824. This type of impossibility has never been recognized as a defense to a charge of attempt.

 Thousand, 465 Mich at 158-159. For example, a pure legal impossibility occurs when “a person goes hunting while erroneously believing that it is not hunting season.” Black’s Law Dictionary (9th ed), p 824.

 Thousand, 465 Mich at 159. For example, a hybrid legal impossibility exists when an individual attempts to bribe a juror, but chooses someone to bribe who is not on the jury.

 Id., quoting Dressler, Understanding Criminal Law (1st ed), § 27.07EB], p 349.

 The majority criticizes my discussion of factual and legal impossibility in which I observe that those defenses apply only to crimes of attempt. In doing so, the majority underscores my point: its newly fashioned impossibility-to-pay defense to a charge of felony nonsupport could be confused with the impossibility defenses that have historically applied in a distinctly different setting.

 Port Huron v Jenkinson, 77 Mich 414; 43 NW 923 (1889).

 Id. at 419.

 Id. at 420 (emphasis added).

 Id.

 Similarly, the majority’s reliance on ancient decisions of English courts in support of its impossibility-to-pay defense is of questionable value. First, those decisions were rendered centuries ago in courts having no authority over this Court. Second, they are easily distinguishable from the case before us because they dealt with impossibility in the truest *431 sense of the word. See Stockdale v Coulson, 3 All ER 154 (1974) (failing to attach documents that never existed), and Regina v Bamber, 5 QB 279, 287; 114 ER 1254 (1843) (comment by Lord Denman, C.J.) (failing to build a road where there was no land). Regina v Hogan, 169 ER 504; 2 Den 277 (1851), is also inapposite. That case considered a mother criminally charged with abandonment after momentarily leaving her child in order to procure food for him. Closer scrutiny of Hogan’s holding reveals that the defense it sanctioned is more appropriately characterized as inability to pay than impossibility to pay. The court specifically noted that there was not an extensive inquiry into whether the mother had the means of supporting the child — not whether it was impossible for her to have supported him. Indeed, that opinion does not contain the word “impossible.” In sum, none of these archaic cases furnishes a precedential basis for the majority’s narrow impossibility-to-pay defense.

 Ditton, 78 Mich App at 617 (finding “no meaningful distinction between [MCL 750.165] and the statute found unconstitutional in Kentucky” for lacking an inability-to-pay defense).

 The majority earnestly insists that this defense would “permit parents who deliberately refuse to pay child support to shirk their responsibilities to their children and manipulate the criminal justice system ....” Ante at 418. This is utterly untrue. As in every other jurisdiction that considers a defendant’s inability to pay, trial courts would weigh the evidence, if any, to determine whether the defendant is able to pay. If the trier of fact determined that the defendant was able to pay, the defense would not apply. It would not enable a defendant to shirk his or her support obligation or otherwise manipulate the criminal justice system. I fully agree with the majority that support obligors must be held *432 responsible for satisfying their obligations. This belief, however, does not undermine the legitimacy of the inability-to-pay defense or justify the majority’s overly restrictive standard. In every other state, those with support obligations are not able to refuse to pay, shirk their responsibilities, or manipulate the criminal justice system simply by raising an inability-to-pay defense.

 People v Jackson, 483 Mich 271; 769 NW2d 630 (2009).

 Id. at 275.

 Id.

 People v Music, 428 Mich 356; 408 NW2d 795 (1987).

 Id. at 363.

 MCL 750.161(1) (emphasis added).

 Emphasis added.

 Emphasis added.

 See, e.g., Beverly v Beverly, 112 Mich App 657, 661; 317 NW2d 213 (1981).

 Zablocki v Redhail, 434 US 374; 98 S Ct 673; 54 L Ed 2d 618 (1978).

 Id. at 394 (Stewart, J., concurring).

 Id. at 400 (Powell, J., concurring).

 Id.

 Id. at 400-401, 403.

 Bearden v Georgia, 461 US 660; 103 S Ct 2064; 76 L Ed 2d 221 (1983).

 Id. at 661-662.

 Id. at 672-673.

 Id. at 669, citing Zablocki, 434 US at 400 (Powell, J., concurring) (emphasis added). The majority cites Bearden in support of its impossibility-to-pay defense. But nowhere in Bearden does the word “impossible” appear, nor any derivation of it. Indeed, the majority opinion is internally inconsistent, as it relies on Bearden’s “sufficient bona fide efforts” standard for guidance in one place, but elsewhere suggests that “ ‘sufficient bona fide efforts . ..’ [to repay a support obligation] . . . standing alone will not necessarily establish an impossibility defense ....” Compare ante at 400 with ante at 401. Furthermore, this Court cited Bearden in support of its implementation of an ability-to-pay analysis in Jackson. See Jackson, 483 Mich at 279-280. In any event, when the principles from Bearden are applied, an inability-to-pay defense would not “permit parents who deliberately refuse to pay child support to shirk their responsibilities to their children and manipulate the criminal justice system ... .” Ante at 418. This is because an inability-to-pay defense would not provide relief to a parent who “will *436 fully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay . ...” Bearden, 461 US at 672.

 I agree with the majority that the willful, recalcitrant, obdurate, or deceitful should not escape felony nonsupport charges.

 See Bearden, 461 US at 662. I believe the United States Supreme Court wisely cast the consideration of a defendant’s inability to pay in broad terms in recognition of the fact that the determination will generally require a fact-specific inquiry.

 See Zablocki, 434 US at 400 (Powell, J., concurring).

 Ditton, 78 Mich App at 616, quoting Commonwealth v O’Harrah, 262 SW2d 385, 388 (Ky, 1953).

 See Ala Code 13-A-13-4 (“A man or woman commits the crime of nonsupport if he or she intentionally fails to provide support which that person is able to provide and which that person knows he or she is legally obligated to provide to a dependent spouse or child less than 19 years of age.”); Alas Stat 11.51.120(a) and (f)(3) (“A person commits the crime of criminal nonsupport if, being a person legally charged with the support of a child the person knowingly fails, without lawful excuse, to provide support for the child.. .. [W]ithout lawful excuse’ means having the financial ability to provide support....”); Ariz Rev Stat Ann 25-511B (“It is an affirmative defense to a charge of [failure to provide for a child] that the defendant. .. was unable to furnish reasonable support.”); Nelke v State, 19 Ark App 292, 294; 720 SW2d 719 (1986) (“In order to make out the offense [of failure to support a wife or child], the State must show a willful or negligent failure to provide, not a mere failure because of inability.”); Cal Penal Code 270 (“The court, in determining the ability of the parent to support his or her child, shall consider all income, including social insurance benefits and gifts.”); Colo Rev Stat 14-6-101 (“It shall he an affirmative defense ... to a prosecution [for felony nonsupport] that owing to physical incapacity or other good cause the defendant is unable to furnish the support, care, and maintenance required by this section.”); Conn Gen Stat 53-304(a) (“Any person who neglects or refuses to furnish. .. support to [a spouse or child] . . . shall be deemed guilty of nonsupport... unless . .. the person is unable to furnish such support.”); Del Code Ann tit 11, § 1113(d) (“In any prosecution for criminal nonsupport or aggravated criminal nonsupport, it is an affirmative defense that the accused was unable to pay or provide support....”); DC Code 46-225.02(d) (“[F]ailure to pay child support, as ordered, shall constitute prima facie evidence of a willful violation. This presumption *438 may be rebutted if the obligor was incarcerated, hospitalized, or had a disability during the period of nonsupport.”); Fla Stat 827.06(2) (“Any person who willfully fails to provide support which he or she has the ability to provide to a child or a spouse whom the person knows he or she is legally obligated to support commits a misdemeanor of the first degree . . . .”); Elam v State, 138 Ga App 432, 432; 226 SE2d 290 (1976) (“ [In convicting the defendant of] wilfully and voluntarily abandoning his minor children .. . the trial court erroneously ruled out some of defendant’s evidence as to his financial condition which tended to negate the element of willfulness . . ..”); Hawaii Rev Stat 709-903 (“A person commits the offense of persistent nonsupport if the person knowingly and persistently fails to provide support which the person can provide and which the person knows the person is legally obliged to provide to a spouse, child, or other dependent.”); State v Shaw, 96 Idaho 897, 900; 539 P2d 250 (1975) (“[W]hether the state .. . has overcome by proof beyond a reasonable doubt his ability to provide or support and the wilful nature of his non-support or omission, are all factual issues for resolution by the jury.”); 750 Ill Comp Stat 16/15(a)(1) (“A person commits the offense of failure to support when he or she ... willfully, without any lawful excuse, refuses to provide for the support or maintenance of his or her spouse . . . or . . . his or her child or children... and the person has the ability to provide the support.”); Ind Code 35-46-l-5(d) (“It is a defense [to charges of nonsupport of a dependent child] that the accused person was unable to provide support.”); Iowa Code 726.5 (“A person, who being able to do so, fails or refuses to provide support for the person’s child or ward under the age of eighteen years for a period longer than one year or in an amount greater than five thousand dollars commits [felony] nonsupport.”); State v Krumroy, 22 Kan App 2d 794, 800; 923 P2d 1044 (1996) (“[The defendant] would be guilty of failing to provide support without lawful excuse if a jury concluded that he had the ability to earn a livelihood and did not do all that he could or should have done under the circumstances.”); Rogers v Commonwealth, 321 SW2d 779, 781 (Ky, 1959) (“Physical disability and financial inability have been recognized as defenses to a prosecution under the child desertion statute.”); La Rev Stat Ann 14:74B(1) (“Physical incapacity which prevents a person from seeking any type of employment constitutes a defense to the charge of criminal neglect of family.”); Me Rev Stat tit 17-A, § 552 (“A person is guilty of nonsupport... if he knowingly fails to provide support which he is able by means of property or capacity for labor to provide and which he knows he is legally obliged to provide to a spouse, child or other person....”); Md Code Ann, Fam Law 10-203(a) (“A parent may not willfully fail to provide for the support of his or her minor child.”); Mass Gen Laws ch 273, § 1(4) (A spouse or parent shall be guilty of a felony if *439 he or she “wilfully and while having the financial ability or earning capacity to have complied, he fails to comply with an order or judgment for support which has been entered ...Minn Stat 609.375(8) (“It is an affirmative defense to criminal liability [for nonsupport of spouse or child] if the defendant proves by a preponderance of the evidence that the omission and failure to provide care and support were with lawful excuse.”); Miss Code Ann 97-5-3 (“Any parent who shall desert or wilfully neglect or refuse to provide for the support and maintenance of his or her child or children . . . shall be guilty of a felony . .. .”); State v Akers, 287 SW2d 370, 372 (Mo Ct App, 1956) (“If through no action of his own he lacked the ability to support them, [the defendant’s] failure to do so was not without good cause and the evidence is insufficient to sustain the conviction.”); Mont Code Ann 45-5-621(1) (“A person commits the offense of nonsupport if the person fails to provide support that the person can provide and that the person knows the person is legally obliged to provide to a spouse, child, or other dependent.”); State v Bright, 238 Neb 348, 352; 470 NW2d 181 (1991) (“The determination of whether a defendant has the ability to pay child support in order to determine whether the failure to do so was intentional is a question of fact left to the jury.”); Epp v State, 107 Nev 510, 513-514; 814 P2d 1011 (1991) (“[T]he State could establish willfulness by showing that [the defendant] ... had the ability to generate income .... Obviously, the law does not contemplate punishing a person for failing to do a thing which he cannot do.”) (quotation marks and citation omitted); NH Rev Stat Ann 639:4 (“A person is guilty of non-support if such person knowingly fails to provide support which such person is legally obliged to provide and which such person can provide to a spouse, child or other dependent.”); NJ Stat Ann 2C:24-5 (“A person commits a crime ... if he willfully fails to provide support which he can provide and which he knows he is legally obliged to provide to a spouse, child or other dependent.”); NM Stat 30-6-2 (“Abandonment of dependent consists of a person having the ability and means to provide for his spouse or minor child’s support and abandoning or failing to provide for the support of such dependent.”); NY Penal Law 260.05(2) (A person is guilty of nonsupport of a child when “he or she knowingly fails or refuses without lawful excuse to provide support for such child when he or she is able to do so ....”); State v McMillan, 10 NC App 734, 735-736; 180 SE2d 35 (1971) (“ ‘In a prosecution [for failure to support a child,] the failure by a defendant to provide adequate support. .. must be wilful, that is, he intentionally and without just cause or excuse does not provide adequate support for his child according to his means and station in life . ...’ ”) (citation omitted); ND Cent Code 12.1-37-01(4) (“It is an affirmative defense to a charge [of failure to support a child] that the defendant suffered from a disability during the periods an unpaid child *440 support obligation accrued .. . Ohio Rev Code Ann 2919.21(D) (“It is an affirmative defense to a charge of failure to provide adequate support ... that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused’s ability and means.”); Okla Stat tit 21, § 852(A) (“[A]ny parent, guardian, or person having custody or control of a child . . . who willfully omits, without lawful excuse, to furnish ... child support... is guilty of a misdemeanor . ...”); State v Timmons, 75 Or App 678, 681; 706 P2d 1018 (1985) (“It is commonly understood that a ‘lawful excuse’ [for failure to pay support] refers to some condition, not of the defendant’s own making, which prevents the defendant from being able to provide support.”); 23 Pa Cons Stat 4354(a) (“An individual who willfully fails to comply with a support order of a court of this Commonwealth when the individual has the financial ability to comply with the support order commits an offense.”); RI Gen Laws 11-2-1.1(a) (“Every person who is obligated to pay child support... and who shall willfully thereafter, having the means to do so, fail to pay . .. shall be guilty of a felony ... .”); SC Code Ann 63-5-20(A) (“Any a&le-bodied person capable of earning a livelihood who shall, without just cause or excuse, abandon or fail to provide reasonable support to his or her spouse or to his or her ... child dependent upon him or her shall be deemed guilty of a misdemeanor ....”); SD Codified Laws 25-7-16 (“A parent of a minor child who intentionally omits without lawful excuse to furnish . . . [child support] is guilty of a... misdemeanor.”); Tenn Code Ann 39-15-101(a) (“A person commits the crime of nonsupport who fails to provide support which that person is able to provide and knows the person has a duty to provide to a minor child or to a child or spouse ... .”); Tex Penal Code Ann 25.05(d) (“It is an affirmative defense to prosecution [for criminal nonsupport] that the actor could not provide support for the actor’s child.”); Utah Code Ann 76-7-201(5)(a) (“[I]t is an affirmative defense [to criminal nonsupport charges] that the accused is unable to provide support.”); State v Thibedeau, 95 Vt 164; 113 A 873 (1921) (“Where, as here, the charge is a willful neglect to support, the pecuniary ability of the respondent [to pay] is material.”); Painter v Commonwealth, 140 Va 459; 124 SE 431, 432 (1924) (“That the absolute inability of the accused to contribute anything to the support of his family should be held to bar the prosecution, at least temporarily, is apparent from a consideration of the act in its entirety, and its avowed purpose.”); Wash Rev Code 26.20.035 (“[A]ny person who is able to provide support... and who . . . [w]illfully omits to provide necessary food, clothing, shelter, or medical attendance to a child dependent upon him or her ... is guilty of the crime of family nonsupport.”); W Va Code 61-5-29(1) (“A person who .. . [r]epeatedly and willfully fails to pay his or her court-ordered support which he or she can *441 reasonably provide and which he or she knows he or she has a duty to provide to a minor ... is guilty of a misdemeanor .. ..”); Wis Stat 948.22(6) (“[Affirmative defenses [to failure-to-support charges] include but are not limited to inability to provide child, grandchild or spousal support.”); Wyo Stat Ann 20-3-101(c) (“It is an affirmative defense to a charge [of desertion] that the person was unable to provide adequate support but did provide such support as was within that person’s ability and means.”). (Each emphasis added.)

 Contrary to the majority’s assertion, it is inconsequential at what stage of a criminal proceeding other states consider a defendant’s inability to pay. Some states consider it as an affirmative defense, some as a traditional defense, and some require proof of ability to pay as an element of a nonsupport charge. The fact remains that it is a defendant’s inability to pay that must be accounted for — not whether it is impossible to pay. No other state recognizes impossibility to pay or impossibility as an affirmative or traditional defense to, or as an element of, a nonsupport charge.

 The United States Supreme Court has explicitly prohibited the practice of debtors’ prisons. See, e.g., Williams v Illinois, 399 US 235, 241-242; 90 S Ct 2018; 26 L Ed 2d 586 (1970) (“[0]nce the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency.”); Tate v Short, 401 US 395, 398; 91 S Ct 668; 28 L Ed 2d 130 (1971) (“[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically *442 converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.”) (quotation marks and citation omitted).

 US Const, Am XIV; Const 1963, art 1, § 2.

 See ante at 402 (“[A] defendant must explore and eliminate all the reasonably possible, lawful avenues of obtaining the revenue required to comply with the support order.”); ante at 402 (“Defendants must not only establish that they cannot pay, but that theirs are among the exceptional cases in which it was not reasonably possible to obtain the resources to pay.”) (emphasis omitted); and ante at 403 n 75 (requiring “genuine” and “tru[e]” impossibility); see also ante at 420 (requiring “exceptional circumstances” to establish impossibility). The majority further injects confusion into its analysis by, at various points, labeling the requisite level of demonstrated impossibility “genuine” or “true.”

 See People v Vaughn, 491 Mich 642, 684; 821 NW2d 288 (2012) (CAVANAGH, J., concurring).

 The majority’s heavy reliance on public policy to support its impossibility-to-pay defense is surprising given the past reluctance of two members to rely on policy considerations when making precedent. In Hanson v Mecosta Co Rd Comm’rs, 465 Mich 492, 504; 638 NW2d 396 *444 (2002), then Justice YOUNG and Justice Makkman stated that “[the Court’s] function is not to . .. independently assess what would be most fair or just or best public policy.”
Assuming that public policy is relevant, the majority’s discussion raises unanswered questions. For instance, does the majority consider the high cost borne by taxpayers for imprisoning felons? Does it consider how those costs will increase to the extent we imprison a greater number of those who fail to make support payments? A recent Pew Center report shows that Michigan already has one of the nation’s highest incarceration rates and is one of only four states to spend more on prisons than higher education. The Pew Center on the States, Time served: The high cost, low return of longer prison terms. June 2012. Available at: <http://www.pwestates.org/ uploadedFiles/PCS_Assets/2012/Prison_Time_Served.pdf> (accessed July 3, 2012); see also State of Michigan, Executive Budget, Fiscal Years 2013 and 2014, pp A-5, B-15. February 9, 2012. Available at: <http:// www.michigan.gov/documents/budget/EBl_376247_7.pdf> (accessed July 3, 2012). Furthermore, it is estimated that Michigan will spend more than $37,000.00 per inmate per year housed in its prisons during 2013 and 2014. Id. at B-15. Does the majority weigh the opportunity cost to society when those imprisoned cannot earn wages and make some contribution toward a support obligation? Does it consider the dismantling of family bonds that results from imprisoning a delinquent parent who would otherwise still provide emotional support, love, or care to his or her family?

 Ante at 405-406.

 Patterson, Civil contempt and the indigent child support obligor: The silent return of debtor’s prison. 18 Cornell J L & Pub Pol 95, 120-121 (2008) (quotation marks and citations omitted).

 See, e.g., United States v Mandycz, 447 F3d 951, 962 (CA 6, 2006) (“Criminal cases offer many due process protections . . . that civil proceedings ... do not.”). The United States Supreme Court has also recognized “the fundamental proposition that criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings . ...” Hicks ex rel Feiock v Feiock, 485 US 624, 632; 108 S Ct 1423; 99 L Ed 2d 721 (1988).

 It also creates enormous confusion to institute an impossibility-to-pay defense in a criminal proceeding, when, in the related civil action, the family court used an ability-to-pay standard. See, e.g., MCL 552.23(1).

 See, e.g., Blue Cross Blue Shield of Mich v Governor, 422 Mich 1, 89; 367 NW2d 1 (1985) (“It is generally well established that issues of fact in *447 civil cases are to be determined in accordance with the preponderance of the evidence ....”) (citations omitted).

 See 2008 MCSF 2.01(G).

 Sullivan v Louisiana, 508 US 275, 277-278; 113 S Ct 2078; 124 L Ed 2d 182 (1993) (“The prosecution bears the burden of proving all elements of the offense charged and must persuade the factfinder ‘beyond a reasonable doubt’ of the facts necessary to establish each of those elements. This beyond-a-reasonahle-douht requirement... applies in state as well as federal proceedings.”) (citations omitted); In re Winship, 397 US 358, 363-364; 90 S Ct 1068; 25 L Ed 2d 368 (1970) (“[A] society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.”).

 See Waknin v Chamberlain, 467 Mich 329, 335-336; 653 NW2d 176 (2002) (“[D]efendant was found guilty beyond a reasonable doubt — a standard of proof granting him protection greater than the preponderance of the evidence standard in the civil case . . ..”).

 This analysis does not disturb the legitimacy of the civil court’s underlying support order. That is, a defendant cannot relitigate in a *448 criminal case the amount of a support order. He or she remains liable for that amount irrespective of the outcome of the criminal proceeding.

 Ante at 374.

 Ante at 374.

 Ante at 375; see also ante at 419.

 McCormick v Carrier, 487 Mich 180, 209; 795 NW2d 517 (2010) (“[T]he. . . majority’s ‘interpretation’ of the plain language of MCL 500.3135(7) was a chilling reminder that activism comes in all guises, including so-called textualism.”) (citation and quotation marks omitted).

 The majority cannot rely on the child support statutes in support of its analysis. Those statutes govern civil proceedings in which the amount of a support award is set. They are irrelevant to criminal proceedings. MCL 750.165 is the only statute that concerns a criminal nonsupport charge.

 Reed, 53 Mich App at 627.